COURT OF APPEALS
DECISION
DATED AND FILED

April 27, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1132-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2019CF80**

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ALEX J. PREMO,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Barron County: JAMES C. BABLER, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Alex Premo seeks review of a suppression ruling that led him to plead guilty on a drug charge. Premo contends the circuit court's

determination of probable cause for his arrest was based upon an assumption of facts not in evidence. We conclude that the totality of the circumstances supported a determination of probable cause even without consideration of the challenged facts. We therefore affirm.

## BACKGROUND

¶2 The following facts from the suppression hearing are undisputed. At about 4:00 a.m. on March 7, 2019, Turtle Lake patrol officer Shane Traczyk responded to a call from a local casino. Upon arriving at the casino, Traczyk spoke with the casino's security supervisor, Gina Kasik. Kasik informed Traczyk that the casino had surveillance video of a suspected drug deal that had recently occurred in its parking lot.

¶3 Traczyk viewed the video in the casino's surveillance room, also recording it on his body camera. He observed three males and one female walk to the casino parking lot and gather around an SUV. Before entering the vehicle, one of the men (later identified as Premo) took something out of his pocket and handed it to another one of the men, who was bald. Traczyk could not determine what had been handed over, but Kasik told him she thought it was money.

¶4 Upon entering the vehicle, the bald man produced some sort of vial, twisted off its cap, and poured an unidentified substance from the vial into a baggie while tapping the top of the vial. The bald man handed the baggie to Premo. Meanwhile, the third man opened one of the SUV's doors and grabbed a jacket. Premo then exited the vehicle and returned to the casino with the third man, while the bald man and the woman drove away in the SUV.

¶5 After Traczyk viewed the surveillance video, Kasik directed him to Premo's location on the gaming floor of the casino. Traczyk approached Premo, asked to speak with him in a side room, and advised him of his *Miranda* rights.[1] Traczyk then told Premo that he had watched a video of the transaction in the parking lot, and he asked Premo what substance had been poured into the baggie. Premo said that he had gone outside so that his friend could grab a jacket, and that he did not know what substance would have been poured into the baggie in the SUV. Premo also denied possessing any illegal substance. Traczyk then placed Premo under arrest and searched him incident to arrest. Traczyk recovered the baggie, which subsequent testing determined to contain methamphetamine.

¶6 Traczyk did not testify about how long he had been a law enforcement officer, whether he had ever personally witnessed a drug transaction or arrested anyone suspected of selling a controlled substance, or what, if any, training he had regarding drug transactions or common packaging for controlled substances. The judge, however, noted that he had sixteen years' experience on the bench and had seen "hundreds and hundreds of methamphetamine cases where methamphetamine is transferred in Ziploc bags or baggies, especially at 4:00 in the morning."

¶7 After taking judicial notice of the manner in which drugs are commonly transferred, the circuit court concluded there was probable cause for arrest, and it denied the suppression motion. Traczyk pled guilty to possessing

---

[1] *See generally **Miranda v. Arizona**, 384 U.S. 436, 458 (1966).

methamphetamine, and he now appeals the suppression ruling. *See* WIS. STAT. § 971.31(10) (2019-20).[2]

## DISCUSSION

¶8 When reviewing a motion to suppress evidence, we will uphold the circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2); *State v. Hindsley*, 2000 WI App 130, ¶22, 237 Wis. 2d 358, 614 N.W.2d 48. We will, however, independently determine whether the established facts satisfy applicable constitutional provisions. *Hindsley*, 237 Wis. 2d 358, ¶22.

¶9 The constitutional provision applicable here is the Fourth Amendment, which protects individuals from unreasonable searches and seizures. U.S. CONST. amend. IV. A warrantless arrest constitutes a seizure for Fourth Amendment purposes, but the arrest is reasonable when supported by probable cause. *District of Columbia v. Wesby*, 138 S. Ct. 577, 585-86 (2018). Probable cause for arrest exists when the totality of the circumstances within the arresting officer's knowledge would lead a reasonable law enforcement officer with similar training and experience to believe that the suspect probably committed a crime. *State v. Kutz*, 2003 WI App 205, ¶11, 267 Wis. 2d 531, 671 N.W.2d 660. The probable cause test is "not a high bar," and it requires only a "substantial chance of criminal activity, not an actual showing of such activity." *Wesby*, 138 S. Ct. at 586. When competing reasonable inferences could be drawn, the officer is entitled to rely on the one justifying arrest. *Kutz*, 267 Wis. 2d 531, ¶12.

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶10    Premo first argues that the circuit court erred in taking judicial notice that drugs are commonly packaged in baggies and often sold in the early morning hours. We will assume without deciding that these facts were not a proper subject of judicial notice. *See* WIS. STAT. § 902.01(2) (authorizing a court to take judicial notice of adjudicative facts that are "generally known within the territorial jurisdiction" of the court or are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

¶11    Premo next contends that the remaining facts in Traczyk's possession were insufficient to provide probable cause for an arrest. Absent any evidence that Traczyk had specific training in drug enforcement, we will evaluate the reasonableness of his actions from the objective point of view of an untrained officer or layperson. Even without having specialized knowledge that drugs are commonly packaged in baggies and are often sold in the early morning hours, we are satisfied that the facts within Traczyk's possession—and reasonable inferences that could be drawn therefrom—would lead a reasonable officer in Traczyk's position to believe Premo had probably committed a crime.

¶12    Traczyk observed video of Premo leaving the casino to conduct a short transaction in a vehicle in the parking lot, suggesting the parties to the transaction may have been seeking out a secluded location. The transaction involved the transfer of a portion of a substance located in a container, which would be consistent with the sale of a fungible substance such as drugs. The casino employee also told Traczyk that he believed Premo had handed money to the bald man, who himself subsequently handed Premo the baggie. Traczyk was aware that the casino employee who witnessed the same video suspected a drug transaction, indicating that the observed behavior was not what the casino employee would expect to see from normal customers, and that it would fit within

5

a layperson's expectation of what a drug transaction would look like. Finally, when questioned, Premo not only failed to provide an innocent explanation for the transaction, but instead he denied any knowledge of what the substance was in the baggie he had just obtained from the bald man to whom he had handed money, as seen on the video. Premo's denial of knowing the identity of the substance highly suggested he had consciousness that the substance was, in fact, contraband.

¶13 In sum, the totality of the circumstances would lead even an untrained officer to reasonably believe that Premo had just engaged in a drug transaction. We conclude there was probable cause for the arrest, and the circuit court properly denied the suppression motion.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.